121 N.J. Super. 245 (1972)
296 A.2d 554
TOWNSHIP OF NEW HANOVER ET AL., PLAINTIFFS,
v.
EDWARD A. KELLY, JR., BURLINGTON COUNTY CLERK, ET AL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 2, 1972.
*246 Mr. Joseph F. Polino for plaintiffs (Mr. James Logan, Jr., attorney).
G. Robert Wills, Deputy Attorney General, for defendants (Mr. George F. Kugler, Jr., Attorney General, attorneys).
MARTINO, A.J.S.C.
Fort Dix and McGuire Air Force Base extend into five separate municipalities located in Burlington County. These municipalities are New Hanover Township, North Hanover Township, Pemberton Township, Springfield Township and Wrightstown Borough. The plaintiff, New Hanover Township, has registered to vote in the 1972 General Election 241 voters. The population according to the 1970 Census is 27,410. It must be assumed that the major portion of its population consists of military personnel. The disparity between the number of registered *247 voters and the population may be caused by many factors which do not necessarily indicate a lack of voting interest.
On September 5, 1972 the Attorney General of the State indicated to the county boards of elections of this State that military service voters as defined in N.J.S.A. 19:57-2, who were in the armed forces or working for the military, must be allowed, if they wish, to register and vote for all elective offices in the municipality in which they physically reside. That it was immaterial whether the individual lives in a dwelling located on the government reservation or in an adjacent community. That registration for voting for President and Vice-President closes 30 days before the November 7, 1972 election, while registration for voting for all other candidates closes 40 days before the election. The Attorney General made it clear that persons in the military service or civilians living on Federal Government reservations must be allowed to participate in the state and local elections of the area in which they resided as long as they were bona fide residents of that area.
Plaintiff New Hanover Township has raised several arguments as reasons for this court to declare that the directive of the Attorney General is arbitrary and capricious; that it has no rational connection to any legitimate interest of residents of Fort Dix and the McGuire Air Force Base in the affairs of government in said municipality; that it violates the right of the individual plaintiffs, namely Patrick Malloy and Benjamin Hance, to the equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States; that plaintiffs have an overriding interest to restrict the right to vote in New Hanover Township local elections to those who are primarily or substantially interested and affected by electoral decisions at the local level; that military personnel do not have a stake equal to those residents in the operation of the local government; that the power to tax does not exist over military personnel, nor can it enforce its ordinances upon the military personnel; *248 that Art. II, par. 5 of the New Jersey Constitution (1947) does not permit military personnel stationed in the military reservation to be considered as residents of this State.
However, it must be conceded that if elected representatives enact new state criminal laws or sanctions, or make changes in those presently in effect, the changes apply equally to persons within the federal enclave. Under the Federal Assimilative Crimes Act, 18 U.S.C. § 13, "Acts not punishable by any enactment of Congress are punishable by the then effective laws of the State in which the enclave is situated." United States v. Sharpnack, 355 U.S. 286, 287, 78 S.Ct. 291, 292, 2 L.Ed.2d 282 (1958). Congress has permitted the states to levy and collect their income tax, gasoline, sales and use taxes  the major sources of state revenue  on Federal enclaves. 4 U.S.C. §§ 104-110. State unemployment laws and workmen's compensation laws likewise apply to persons who live and work in federal areas. 26 U.S.C. § 3305; 40 U.S.C. § 290.
It is impossible to predict at this time the extent of the effect of the directive on the number of persons who will be eligible to vote in future elections in New Hanover Township. While those qualified to vote in the 1972 election is 241, it must be conceded that if the directive is upheld the township should expect a greater increase in elections to come. What portion of the population can qualify in the future will have to be conjectural. It has been stipulated that of the 241 registered voters, 17 reside on the military reservations of Fort Dix or McGuire Air Force Base.
It must be conceded that the directive could create a problem which plaintiffs never conceived would arise in view of the interpretation that was placed upon the status of military voters in the past.
Efforts to prevent residents of federal enclaves from voting in states in which they are geographically located are not new. See Adams v. Londeree, 139 W. Va. 748; 83 S.E.2d *249 127 (Sup. Ct. 1954); Rothfels v. Southworth, 11 Utah 2d 169, 356 P.2d 612 (Sup. Ct. 1960); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970).
A state does have an interest in limiting the franchise to bona fide members of the community, but this does not justify or explain the exclusion from the franchise of persons, not because their bona fide residence is questioned but because they are recent rather than long time residents. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).
Residents of a federal reservation or enclave located within the geographical boundaries of a county in the State of Maryland were not excluded from the right to vote, and the court there said:
In nearly every election, federal, state, and local, for offices from the Presidency to the school board, and on the entire variety of other ballot propositions, appellees [residents] have a stake equal to that of other Maryland residents. [Evans v. Cornman, supra]
In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), a provision of the Texas Constitution prohibited "[a]ny member of the Armed Forces of the United States" who moves his home to Texas during the course of his military duty from ever voting in any election in that state "so long as he or she is a member of the Armed Forces."
The provision in our Constitution reads:
"No person in the military, naval or marine service of the United States shall be considered a resident of this State by being stationed in any garrison, barrack, or military or naval place or station within this State." [Art. II, par. 5]
Article II, supra, of our State Constitution concerns "Elections and Sufferage," and a restrictive construction of Art. II, par. 5 would clearly intimate that for the purpose of voting, a person in the military service who is stationed here does not acquire a residence for voting. In effect the objective *250 might be construed to be the same as the Constitutional provision passed upon in Carrington v. Rash, supra, and declared to be invalid.
For plaintiffs to argue that the constitutional provision is being violated would do them no good, for if the court were to determine that the provision would bar any military personnel from qualifying as a voter, the court would, under Carrington, supra, be required to invalidate the constitutional provision for its invidious discrimination. The better construction, however, would be that a person "stationed" in a military base, because of that fact alone, would not qualify such an individual to vote until and unless he can prove his presence in the enclave for the durational period provided by other provisions of the State Constitution. Art. II, par. 3(a) (b) (c), as amended by the 26th Amendment of the United States Constitution.
In the construction of constitutional limitations courts are enjoined, as in the case of statutes, to collect the sense and meaning of the particular clause by comparing one part with another and by considering all the parts as a whole and not one part as a separate and independent provision bearing no relation to the remainder. The thing sought in the exposition of a constitutional provision is the intent of the people, and in the absence of ambiguity calling for permissible extrinsic aids, this is to be found in the instrument itself. John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950); State v. Murzda, 116 N.J.L. 219 (E. & A. 1936).
Many of the arguments made in the case before this court were made in Carrington, supra, in which case the constitutional provision was declared to be invalid, viz, a base commander who opposes local police administration or teaching policies in local schools might influence his men to vote in conformity with his predelictions; local bond issues may fail and property taxes stagnate at low levels because military *251 personnel are unwilling to invest in the future of the area, and the transient nature of members of the military subject to transfer at any time.
To forbid a soldier ever to controvert the presumption of nonresidence imposes an invidous discrimination in violation of the 14th Amendment since there is no indication in the Constitution of the United States that occupation affords a permissible basis for distinguishing between qualified voters within the state. Gray v. Sanders, 372 U.S. 368, 380 (1963).
The Civil Rights Act of 1964, as amended, provides that in determining whether any individual is qualified under state law or laws to vote in any election, the officials shall not apply "any standard, practice, or procedures different from the standards, practices, or procedures applied under such law or laws to other individuals." 42 U.S.C.A. § 1971(a)(2)(A). Though it has generally been dealt with in racial contexts, its sweeping terminology suggests application to discrimination in student and other nonracial contexts. Worden v. Mercer County Board of Elections, 61 N.J. 325, 333 (1972).
Chief Justice Weintraub, in his concurring opinion in Worden, supra, clearly enunciated a principle which should be controlling here.
A student, and a non-student as well, who satisfies the durational requirement, may vote where he resides without regard to the duration of his anticipated stay or the existence of another residence elsewhere. It is for him alone to say whether his voting interests at the residence he selects exceed his voting interests elsewhere. [Emphasis added.]
Since this court concludes there is no merit in plaintiffs' attack on the directive of the Attorney General, the motion for summary judgment in favor of defendants is granted and the motion in favor of plaintiffs is denied.