124 N.J. Super. 504 (1973)
308 A.2d 24
THOMAS G. MARKS, PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NEW HANOVER, ETC., ET AL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 29, 1973.
Decided July 12, 1973.
*505 Before Judges LORA, ALLCORN and HANDLER.
Messrs. Hartman, Schlesinger & Schlosser, attorneys for appellant (Mr. Robert A. Porter on the brief).
Mr. Robert C. Maida, attorney for respondents.
PER CURIAM.
Plaintiff appeals from the dismissal of his complaint in lieu of prerogative writs which sought a declaration that the governing body of New Hanover "shall forthwith consist of 5 members" instead of its current composition of three members.
The concerned municipality (which, apparently, has not been made a party to this proceeding), is a township situated in Burlington County. The pertinent portions of those sections of the applicable statutes controlling the membership of the governing body of a township, provide:
The township committee shall consist of three members except where otherwise specifically provided by law. * * * [N.J.S.A. 40:146-1]
In every township * * * having a population of more than forty-five hundred, the township committee shall consist of five members. * * * [N.J.S.A. 40:146-2]
New Hanover contains within its borders portions of the federal enclaves commonly known as Fort Dix and McGuire Air Force Base, military reservations under the jurisdiction of the United States of America. According to the advance report of the 1970 census of New Jersey, published by the U.S. Department of Commerce as of December, 1970, parts of which are reproduced in the appendix, New Hanover had a total of 27,410 persons living within its geographical boundaries, of whom 23,045 were attributed to Fort Dix and 4,109 were attributed to McGuire Air Force Base. By simple computation, the persons not living within one or the other of the military reservations amounted to 256 in number.
The single issue in dispute is whether all or any part of the persons living in one or the other of the military reservations *506 within the township should be included in determining its population within the meaning of that term as it is used in N.J.S.A. 40:146-2. It is the position of appellant that the census figures are controlling and that all persons living on the military reservations within the township must be included. He points to the definition of the term as set forth in N.J.S.A. 1:1-2, which reads in relevant part:
Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.

* * *
Population; inhabitants. The word "population," when used in any statute, shall be taken to mean the population as shown by the latest Federal census effective within this State, and shall be construed as synonymous with "inhabitants".
Having due regard to the subject matter, it is apparent that the word "population," in the context in which it is used in N.J.S.A. 40:146-2, necessarily imports some degree of permanency of residence greater than that represented by those military personnel who, literally, are transients  those "passing through or by a place with only a brief stay or sojourn." Merriam-Webster Third International Dictionary (1961). It surely could not have been intended to include, for example, personnel ordered to one of these bases as a way station for transportation to another installation or assigned temporarily for a brief, specified period of training.
On the other hand, the degree of permanency of residence required to qualify as an "inhabitant" or one of the "population", no longer may be measured according to the test enunciated by our Supreme Court in 1957, as "one who actually and permanently resides in a given place and who has his domicile there * * * [and] implies permanent abode." In re Loch Arbour, 25 N.J. 258, 263.[1] This concept of permanent *507 abode and domicile, in the sense of a present intent to remain indefinitely, has been recently substantially modified in Worden v. Mercer Cty. Bd. of Elections, 61 N.J. 325 (1972). It was there held, in effect, that college students who were bona fide residents of their college campuses and who satisfied the State's durational residence requirements, were entitled to register and to vote in their college communities, without regard to the presence or absence of any intention to make such communities their homes indefinitely.[2]
So far as concerns voting eligibility, we can discern no significant relevant distinctions between college students who are bona fide residents of their college campuses and military personnel who are bona fide (i.e., nontransient) residents of their military reservations. See New Hanover Tp. v. Kelly, 121 N.J. Super. 245 (Law Div. 1972). The fact that the person in military service may reside at his military reservation pursuant to ordered assignment, rather than as the result of his free and voluntary choice, differentiates him not at all from any other person whose business, employment or other pursuits compel his residence at or near a given community and involve regular or irregular transfer from place to place.[3]
We are not unmindful of the provisions of N.J. Const. (1947), Art. II, par. 5 to the effect that no person in the military service of the United States "shall be considered a resident of this State by being stationed in any military reservation within the State." In view of Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), it is dubious that such provision could itself withstand constitutional attack were it to be interpreted as creating an irrebutable presumption of nonresidence for all such military personnel for purposes of voting. See New Hanover Tp. v. Kelly, supra, 121 N.J. Super. at 250-251.
*508 Nor are we unaware that the United States Supreme Court, in Carrington, confirmed the proposition that a state still may "require that all military personnel * * * be bona fide residents of the community," "with the intention of making [the State] ... their home indefinitely," as a prerequisite to exercising their franchise. 380 U.S., at 93-94, 85 S.Ct. at 779. By necessary implication, however, the same requirement would have to be applied to all other residents to qualify for voting  including college students. New Jersey could not single out military personnel and impose upon them a more restrictive requirement in this regard than it imposed upon other bona fide residents. Worden v. Mercer Cty. Bd. of Elections, supra.
Quite obviously, the question presented for determination in the case presently before the court does not directly involve the right of military personnel (and the immediate members of their households), who are bona fide residents at one or the other of these two military reservations for the requisite durational period, to register and to vote in state and local elections. Nevertheless, the issue of the nature and duration of residence required to qualify for voting, and the issue of the nature and duration of residency required with respect to political representation, have sufficient state and local concerns in common to justify (if not to compel) similarity of treatment. Opinion of the Justices, 111 N.H. 146, 276 A.2d 825 (Sup. Ct. 1971). See also, Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).[4]
Thus, in the determination of which among those persons shown by the most recent census to be living at these military reservations are to be counted in the compilation of the population or number of inhabitants of the municipality for the purpose of fixing the size of the municipal governing body, only those bona fide residents who have satisfied or reasonably may be expected to satisfy the durational residence *509 requirements for voting imposed by the State (and the bona fide resident members of their households), should be included. It would be anomalous indeed to include in such count personnel who were not and could not attain voting eligibility by reason of their assignment to one of these installations for a specified period which is less than the State's minimum durational residence requirement. Their interest, if any, in the number or make-up of the membership of the local governing body would be de minimis. See Opinion of the Justices, supra; Burns v. Richardson, 384 U.S. 73, 90-92, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); Kirkpatrick v. Preisler, 394 U.S. 526, 534-535, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969), reh. den. 395 U.S. 917, 89 S.Ct. 1737, 23 L.Ed.2d 231 (1969).
Accordingly, the judgment of the Law Division is reversed and the cause is remanded for trial for the determination of the population of New Hanover, with directions that within 30 days after the filing date of this opinion plaintiff join the municipality as a party defendant so that any determination will bind the municipality, and, in default of such joinder, the complaint be dismissed. No costs.
NOTES
[1] Such concept seems still to be accepted by the American Law Institute. See Restatement, Conflicts 2d, "Domicil," §§ 11 et seq. (1971), particularly § 18, comment f(13).
[2] Compare Vlandis v. Kline, ___ U.S. ___, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).
[3] Contra, § 17, Restatement, supra n. 1.
[4] Compare provisions of N.J. Const. (1947), Art. IV, § II, pars. 1 and 3, governing apportionment of the State Legislature.