438 A.2d 951

COMMONWEALTH of Pennsylvania,

v.

Carnell HENDERSON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1981.

Decided Dec. 24, 1981.

24

26

John W. Packel, Chief, Appeals Div., Asst. Public Defender, Karl Baker, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., James B. Jordan, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant Carnell Henderson was charged with a brutal assault and rape that occurred in a center-city Philadelphia parking lot. The assailant attacked his victim from behind as she inserted the key into the door of her car. He grabbed her, then spun her around, choked her with one hand and repeatedly struck her with the other. After opening the door, he knocked his victim across the front seat, entered the car and locked the door. She was then pulled upright, seized by the throat, and beaten again. When she tried to escape, the assailant grabbed her and bit her cheek with such force that the scars were still evident at the time of trial. The assailant then took thirty-five dollars from her purse and forced her into the back seat, where he removed her clothes, and still choking her with one hand, raped her. The victim was unable to return to work for a month and bears a permanent scar on her face.

The victim identified appellant at a lineup on March 10, 1977, soon after his arrest. He was convicted in the Court of Common Pleas of Philadelphia, after jury trial, of rape, robbery, and aggravated assault. Postverdict motions were denied and appellant was sentenced to fifteen to thirty years

imprisonment. On direct appeal, the Superior Court affirmed the judgments of sentence in a *per curiam* order issued May 18, 1979. On August 27, 1979 this Court granted the appellant's petition for allowance of appeal. For the reasons stated below, we affirm.

The first of appellant's four assignments of error is that he was denied due process of law, equal protection of law, and a jury of his peers because of the Commonwealth's alleged systematic and deliberate exclusion by peremptory challenge of all black members of appellant's jury panel. Appellant is black. The venire in this case consisted of thirty-seven persons, five of whom were black. The Commonwealth struck all five black veniremen by use of its peremptory challenges. Appellant objected to the panel because it had so few blacks and moved to form a new panel in which there would be "sufficient blacks so the Commonwealth is not able to systematically exclude all blacks with their strikes." We are asked to rule "that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias...violates the right to trial by a jury drawn from a representative cross-section of the community under both Article I, Section 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the Federal Constitution."

■ We observe at the outset that mere underrepresentation of any given group on a jury does not constitute unconstitutional discrimination *per se*. The United States Supreme Court in *Swain v. Alabama,* stated:

[A] defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. *Virginia v. Rives,* 100 U.S. 313, 322–323, 25 L.Ed. 667, 670–671; *Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; *Thomas v. Texas,* 212 U.S. 278, 282, 29 S.Ct. 393 [394], 53 L.Ed. 512, 513; *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the propor-

tionate strength of every identifiable group. "Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible." *Cassell v. Texas,* 339 U.S. 282, 286–287, 70 S.Ct. 629 [631], 94 L.Ed. 839, 847 (opinion of Mr. Justice Reed, announcing judgment).

380 U.S. 202, 208, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965). In the present case, the jurors were chosen from the voter registration rolls. Although there is a bare allegation that Blacks are underrepresented on such rolls, this Court has required that in order to establish that the use of any selection device unconstitutionally fails to reflect a fair cross-section of the community, the challenger must present proof of underrepresentation. *Commonwealth v. Martinez,* 475 Pa. 331, 334, 380 A.2d 747, 749 (1977). No proof was submitted. Selection of the larger panel from which the petit jury is selected is, therefore, not at issue in this case.

 When reduced to its basic elements, appellant's argument with respect to the jury selection process is that the prosecutor committed constitutional error when he utilized his peremptory challenges to strike black jurors, apparently because he believed that black jurors would tend to be more favorable than white jurors to the black defendant accused of a crime of violence against a white person. This appeal reflects the persistent notion that such prosecutorial use of peremptory challenges is unconstitutional. *See Commonwealth v. Futch,* 492 Pa. 359, 363–364, 424 A.2d 1231, 1232–1233 (1981); *State v. Eames,* 365 So.2d 1361, 1367 (La.1978), Annot., "Use of Peremptory Challenge to Exclude from Jury Persons Belonging to a Class or Race," 79 ALR3d 14 (1975). The United States Supreme Court has spoken to this issue in *Swain v. Alabama* :

[Peremptory challenge] is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality,

occupation or affiliations of people summoned for jury duty.... Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

380 U.S. at 220–221, 85 S.Ct. at 835–836. Put another way, it is not constitutional error for a prosecutor to challenge a black juror for the reason that the prosecutor believes—validly or invalidly—that a black venireman because of the facts of the case, is less likely to be impartial than a white venireman. Put still more reductively, the race, creed, national origin, sex or other similar characteristics of a venireman may be proper considerations in exercising peremptory challenges when issues relevant to these qualities are present in the case. The United States Supreme Court has stated:

It is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged.

*Swain v. Alabama*, 380 U.S. at 223, 85 S.Ct. at 837.

We emphatically assert that this Court does not subscribe to any theory concerning the likelihood that one racial group will be biased against another in litigation involving members of both groups. In fact, we strongly suspect that all such theories are no more than mere speculation. But what this Court believes about the viability of theories of racial bias is irrelevant to an analysis of the problem of the proper use of peremptory challenges. Peremptory challenges, historically and by definition, are arbitrary and perhaps even irrational challenges to the seating of a juror. They are totally subjective and not subject to scrutiny or examination. As the United States Supreme Court wrote in *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892): "[The peremptory challenge] is, as Blackstone says, an arbitrary and capricious right; and it must be

exercised with full freedom, or it fails of its full purpose."
Cited with approval in *Swain v. Alabama*, 380 U.S. at 219, 85
S.Ct. at 835. Furthermore, the Court in *Swain* pointed out
that to entertain objections of the nature raised in this case
would be to destroy the peremptory nature of the challenge:

> To subject the prosecutor's challenge in any particular
> case to the demands and traditional standards of the
> Equal Protection Clause would entail a radical change in
> the nature and operation of the challenge. The challenge,
> pro tanto, would no longer be peremptory, each and every
> challenge being open to examination, either at the time of
> the challenge or at a hearing afterward. The prosecutor's
> judgment underlying each challenge would be subject to
> scrutiny for reasonableness and sincerity. And a great
> many uses of the challenge would be banned.

*Id.* at 221–222, 85 S.Ct. at 836–837.

■ As the United States Supreme Court has observed in
*Swain*, peremptory challenges were originally available only
to the defendant. In this country, however, the view has
been that both sides, defense and prosecution alike, should
be able to exercise peremptory challenges. The defendant
should be able to strike those *thought* to be biased against
him; the prosecution should be able to strike those *thought*
to be prejudiced against it. *Swain v. Alabama*, 380 U.S. at
220, 242 ff, 85 S.Ct. at 835, 847. But this right to peremptory challenge, though it has been described as "one of the
most important of the rights secured to the accused," *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38
L.Ed. 208 (1894), is not constitutionally based.

> There is nothing in the Constitution of the United States
> which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by impartial
> jury is all that is secured.

*Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63
L.Ed. 1154 (1919). The United States Court of Appeals has
pointed out,

> since the right to peremptory challenges is "in the nature
> of a statutory privilege,... [it] may be withheld altogeth-

er without impairing the constitutional guaranties of 'an impartial jury' and a fair trial." *Frazier v. United States,* 335 U.S. 497, 505, n. 11 [69 S.Ct. 201, 205, 93 L.Ed. 187] ... (1948).

*United States v. Aiessandrello,* 637 F.2d 131, 141 n.16 (3rd Cir. 1980).

Two other states, California and Massachusetts, responding to constitutional challenges similar to the challenge raised in the present case, have taken positions different from that adopted by the United States Supreme Court in *Swain v. Alabama.* We have previously noted these cases and summarized their holdings as follows:

> *People v. Wheeler,* involving seven peremptory challenges exercised against black prospective jurors, set forth the following requirements for a prima facie case of discriminatory use of the peremptory challenge:
>
> "First, ... [the challenger] should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias."

22 Cal.3d [258] at 280, 148 Cal.Rptr. [890] at 905, 583 P.2d [748] at 764 (Footnote omitted).

> *Commonwealth v. Soares,* involving peremptory challenges exercised against 12 of 13 black prospective jurors, articulated a similar standard. It requires a showing that:
>
> "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership."

[377] Mass. [461] at [490], 387 N.E.2d [499] at 517.

*Commonwealth v. Futch,* 492 Pa. 359, 366 n.6, 424 A.2d 1231, 1234, n.6 (1981). For the reasons that follow, we decline to follow the direction taken by California and Massachusetts.

■ Although peremptory challenges are not constitutionally required, we are reluctant to abolish or otherwise alter a traditional system of jury selection which has, in the main, worked well. Peremptory challenges have been integral to criminal trial procedure for over six hundred years and continue to be used in every jurisdiction in the United States. *Swain v. Alabama*, 380 U.S. at 212–219, 85 S.Ct. at 831–835. Furthermore, as is explained by the great Blackstone, there are good reasons for the existence of a system of peremptory challenges:

> [I]n criminal cases, or at least in capital ones, there is, *in favorem vitae* allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all, which is called a *peremptory* challenge; a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.

4 Blackstone, *Commentaries*, 353 (New York, 1859). Since it is our view that both the defendant and the prosecution should be able to be reasonably assured that the jury before whom they will appear will be fair and impartial—an assurance implemented by the right to exercise peremptory challenges—we decline to curtail or disturb either the prosecutorial or the defense right to peremptory challenges.

■ Finally, we decline to follow the approach taken by California and Massachusetts because the protections they have devised against abuse of the exercise of peremptory challenges are illusory. Both states, ultimately, require a showing that persons are challenged, in California, "because of their group association rather than because of any specific bias," and in Massachusetts because "there is a likelihood they are being excluded from the jury solely by reason of their group membership." It will be recalled that under *Swain v. Alabama, supra,* it is permissible to challenge a venireman peremptorily because of his race or religion or supposed group affiliation so long as there is reason to believe that the race, religion or supposed group affiliation is related to a significant issue in the case. 380 U.S. at 221, 85 S.Ct. at 836. A prosecutor's response to an objection to peremptory challenge of black veniremen in California and Massachusetts, therefore, need be only that in the prosecutor's judgment, the race of the venireman is related to the venireman's ability to be impartial in the case. This idea has been considerably expanded in a recent article concerning the ease with which the California and Massachusetts approaches can be circumvented by prosecutors who merely articulate reasons for their challenges. Articulated reasons may be:

> Not, "I'm excusing all blacks, may it please the court, because they're black." Of course not. Rather, "I'm excusing blacks, your honor, because I have a hunch ... that blacks will be prejudiced against the prosecution in this case." Or, "One of the prosecution witnesses is prejudiced against blacks, which will be obvious to black jurors, your honor, who therefore ought to be excused." Or, "The testimony in this case may refer to race in a way insulting to black people." Or, "My sense of how a jury will look at this case is that black jurors will differ with white jurors and vice versa, and, your honor, I want to avoid a hung jury." Et cetera. There comes a point, in sum, when the fluency and rationalizing powers of a lawyer overcome any burden the *Wheeler-Soares* rule may place upon prosecutors to justify their peremptory chal-

34

lenges. At that point, for all practical purposes the *Wheeler-Soares* rule ceases to exist.

7 *Litigation* (Fall 1980), at 56.* We agree that the *Wheeler-Soares* rule is unworkable. Further, we agree that the peremptory challenge is "one of the most important of the rights secured to the accused," *Pointer v. United States, supra,* and we decline to limit that right, either as to the prosecution or the defense. Both parties have a legitimate and significant interest in feeling as secure as reasonably possible that the jury before whom they appear will be impartial. Peremptory challenges are important to the realization of this interest. Because of these considerations, we conclude that the test for racial discrimination in the use of peremptory challenges set out in *Swain v. Alabama* is the proper one:

> [W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance.... In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted.

380 U.S. 223–224, 85 S.Ct. at 837–838.

To hold otherwise would be to destroy the peremptory challenge and to deny, implicitly, the validity of the reasons for having such a device in the first place. We reject this result.

■ Appellant next claims that the lower court erred in refusing to suppress an out-of-court lineup identification as unconstitutionally suggestive in that none of the other men in the lineup matched all of his physical characteristics. The

* *See also* the dissenting opinion of Mr. Justice Richardson in *People v. Wheeler,* 148 Cal.Rptr. 890 at 914, 583 P.2d 748 at 772 (1978).

victim observed her assailant constantly and at close range throughout the attack, which lasted nearly a half hour. Afterwards, she gave police a detailed description of the assailant's height, weight, build, and clothing that matched the defendant. Upon viewing the lineup composed of eight men of similar age and build, the victim recognized and identified the appellant as the man who beat and raped her. After viewing photographic slides of the lineup array, and hearing testimony from the victim and officers present at the identification, the suppression judge ruled that the line-up was fair and denied the appellant's motion to suppress. Because the hearing court's ruling is supported by the record, the admission into evidence at trial of the identification of the defendant at the lineup may not now be disturbed. *See Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978). The purpose of a lineup is to effect a fair and accurate identification, not to present the victim with a group of indistinguishable clones.

Appellant's third allegation of error is that the trial court erred in ruling that appellant's prior convictions for theft and robbery were admissible to impeach his credibility, should he testify at trial. The appellant concedes that had he testified, he would have merely denied guilt; he does not claim that he would have proffered any other defense, such as alibi or consent. Moreover, the prosecutor had no basis for cross-examination or impeachment of this testimony but the convictions for *crimen falsi*, which would of course be probative of the defendant's credibility and relevant to the jury's determination of a "swearing contest" between the defendant and his victim.

In *Commonwealth v. Roots* this Court articulated five basic considerations the trial court must balance in determining whether evidence of prior crimes should be admitted for the limited purpose of impeaching the defendant's credibility and veracity:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness;

2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person;

3) the age and circumstances of the defendant;

4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and

5) the existence of alternative means of attacking the defendant's credibility.

482 Pa. 33, 39–40, 393 A.2d 364, 367 (1978).

█ A point-by-point consideration of these five factors establishes the propriety of the trial court's ruling:

1) The prior convictions, two for theft and one for robbery, were for *crimen falsi* and thus highly pertinent to veracity and credibility. *Commonwealth v. Perrin*, 484 Pa. 188, 195, 398 A.2d 1007, 1001 (1975). The convictions, secured between 1974 and 1976, were recent, and their relevance not attenuated by age. *See Commonwealth v. Green*, 477 Pa. 170, 179, 383 A.2d 877, 882 (1978).

2) The convictions for such crimes of falsehood and deceit could not be reasonably said to invite the jurors to convict the defendant of a brutal sexual attack because of his character or propensity to rape.

3) Appellant was a twenty-one year old adult at the time of trial.

4) The prosecution's case depended solely upon the testimony of the victim and her identification of the appellant as the rapist. The accuracy of that identification was attacked through vigorous cross-examination, including attempts to show that the victim had made prior inconsistent statements, by defense witnesses who testified to the circumstances surrounding the lineup, and by argument to the jury

that the identification procedures were suggestive. Through cross-examination and his own witnesses, the appellant presented his full case to the jury; his purported testimony would have added nothing to his central argument that the identification was erroneous, and would have only placed his credibility, versus that of the victim, before the jury. Indeed, the appellant's claim of innocence was fully presented to the jurors by his pleas of not guilty.

5) The Commonwealth had no alternative means of attacking the appellant's credibility, or of cross-examining him upon his mere denial of guilt.

Because the trial court's ruling allowing impeachment was a sound exercise of discretion based on a proper balancing of the competing considerations appellant's claim is rejected.

Appellant's final claim is that the trial court erred in refusing to instruct the jury that the identification testimony must be considered with caution in light of the suggestiveness of the lineup and the emotional state of the victim. In that portion of his charge governing the jury's evaluation of identification evidence, the trial judge instructed as follows:

Now, members of the jury, there has been some testimony in this case, and a very integral part of the case relative to the identification of the defendant as the perpetrator of the crime.

There are certain tests the jury is to apply to the testimony on identification. I want to go over those tests that the law has set out for you.

If you believe, members of the jury, that the witness was not, was not in a position to clearly observe the assailant, if you believe that, or if you believe that the witness is not positive as to the identity, or if you believe that the positive statements as to identity were weakened by qualification or by failure to identify the defendant on one or more prior occasions and that the accuracy of the identification then is so doubtful then that testimony as to identity must be received with caution.

On the other hand, however, if you believe that the opportunity for positive identification was good, if you believe that, and that the witness is positive in their identification and that the identification is not weakened, not weakened by prior failure to identify but remains, even after cross-examination positive and unqualified, if you believe that, then the testimony as to identification need not be received with caution and the witness' testimony, under those circumstances as to identity may be treated by you as a statement of fact.

 This Court has long held that the above-quoted instruction is a proper and sufficient statement of the law, and one that provides full and fair guidance for the jury's assessment of the weight to be accorded identification testimony. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). *See also Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973). As appellant notes in his brief, a trial judge must "illuminate all relevant legal issues for the jury" in his charge. *Commonwealth v. Moore*, 463 Pa. 317, 323, 344 A.2d 850, 853 (1975). By specifically focusing the jurors' attention upon the victim's opportunity to observe her assailant, upon the force of her identification of appellant, and upon any qualifications or inconsistencies in that identification before or during trial, the court met that duty and insured to the appellant a fair jury evaluation of the reliability of the victim's identification and of the full range of arguments presented by counsel in summation. There was no error in the court's charge or in refusing to modify the charge as requested by appellant.

Judgments of sentence affirmed.

ROBERTS and NIX, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

I dissent.

The trial court abused its discretion in ruling that appellant's prior convictions of robbery and theft would be admissible to impeach appellant if he took the stand "merely [to]

deny the allegations, without offering any alibi," of the charges of robbery, rape, and aggravated and simple assault. The court's ruling impermissibly caused appellant to forgo his right as a citizen accused to testify in his own defense.

The majority's unfounded statement that prior convictions of robbery and theft "could not be reasonably said to invite the jurors to convict the defendant of a brutal sexual attack because of his character or propensity to rape" ignores the element of force which is essential to robbery and which suggests a propensity to commit crimes involving force, including rape. Moreover, the majority ignores the critical fact that appellant was on trial not only for rape but also for robbery and assault. It must be obvious that a prior conviction for robbery would, at the very least, suggest a propensity to commit robbery again.

On this record, the Commonwealth has failed to establish that the circumstances of appellant's prior crimes of robbery and theft involved dishonesty or false statement, a prerequisite to the admissibility of these crimes. See *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). However, even assuming such a showing, the Commonwealth has in no respect satisfied its burden "to show that the need for this evidence [to cast doubt upon the defendant-witness's veracity] overcomes its inherent potential for prejudice." *Commonwealth v. Roots*, supra, 482 Pa. at 41, 393 A.2d at 368. As this Court has stated,

> "[w]hen we consider the difficulty in limiting this type of evidence to the purpose for which it was introduced, the natural tendency for it to be interpreted as indicative of the defendant's propensity to commit crime, and the ineffectiveness of cautionary instructions, it is apparent that the prosecution should be required to show that the state's interest in its probative value outweighs the prejudice that will inure to the defendant."

Id.

This Court has made clear that "of 'critical importance' is 'the extent to which it is more important to the search for

truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.' " Id., quoting *Commonwealth v. Bighum*, supra, 452 Pa. at 567, 307 A.2d at 263. The defendant's own testimony is most critical in a case where that testimony is the only evidence through which the jury can hear the defendant's version of the truth. Contrary to the assumption of the majority and the trial court, the need for the defendant's own testimony is more compelling where, as here, that testimony is his only means to deny commission of the crimes charged, than where an accused defends on the theory of alibi, a defense that can be presented through the testimony of other witnesses.

The majority errs in concluding that "[t]he Commonwealth had no alternative means of attacking the appellant's credibility, or of cross-examining him upon his mere denial of guilt." It is well settled that "[t]he scope of cross-examination of a defendant in a criminal case is one of great latitude." *Commonwealth v. Petrakovich*, 459 Pa. 511, 523, 329 A.2d 844, 850 (1974). " 'The right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine any facts tending to refute "inference or deductions" arising from matters testified to on direct.' " Id., 459 Pa. at 523 n.6, 329 A.2d at 850 n.6, quoting *Commonwealth v. Lopinson*, 427 Pa. 284, 300, 234 A.2d 552, 562 (1967). The Commonwealth had available to it the same means of impeaching credibility that are present in any criminal case where the defendant does not have a prior criminal record.

Whatever the evidentiary value to the Commonwealth of appellant's prior convictions, it is clear that their probative value was far outweighed by the potential for prejudice to appellant. As this Court has expressly stated, prior crimes are admissible for impeachment only if they involve dishonesty or false statement and are "of essential evidentiary value to the prosecution and not unreasonably unfair to the defense." *Commonwealth v. Roots*, supra, 482 Pa. at 39, 393 A.2d at 367. Because on this record the Commonwealth has not satisfied these requirements for the admissibility of

appellant's prior convictions, appellant must be granted a new trial.

NIX, Justice, dissenting.

I am forced to disagree with the majority in two respects. First, as I have previously stated, I do not believe the standard articulated in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) adequately protects a defendant's right to a petit jury selected from a fair cross section of the community. *See Commonwealth v. Martin,* 461 Pa. 289, 298–300, 336 A.2d 290, 294–296 (1975) (Nix, J., dissenting). Second, I am of the view that the trial judge was in error in ruling that appellant's three prior convictions could be used for impeachment purposes in the event that appellant testified in his own behalf at his trial.

## I.

Appellant was a member of the Black race charged with raping a white woman. The case against appellant was premised entirely on the testimony of the victim. The panel from which the petit jury was selected consisted of thirty-seven (37) persons, five of whom were Black. Appellant's counsel objected to the panel on the ground that it was not reasonably representative of the community. His request for a new panel was denied.

During the selection process the prosecutor used his peremptory challenges to strike all of the prospective Black jurors. The prosecutor did not use the allotted peremptory challenges to excuse any the prospective white jurors. Again, appellant's counsel objected. That objection was on the grounds the Commonwealth was using its peremptory challenges to exclude all available members of the Black race from serving on the jury. The objection was overruled. Today, the majority relies upon the sanctity of peremptory challenges and the rationale of *Swain v. Alabama, supra,* to support its affirmance of the trial court's rulings.

In *Swain* a majority of the United States Supreme Court, considering an equal protection claim based upon a prosecu-

tor's use of peremptory challenges to exclude Blacks from a petit jury, concluded:

In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. *Id.* 380 U.S. at 222, 85 S.Ct. at 837.

The *Swain* majority held that the presumption that the challenges are being exercised "to obtain a fair and impartial jury" is only overcome when:

... the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the

administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Id.* at 223–24, 85 S.Ct. at 837–38.

It is clear that the *Swain* majority viewed the equal protection claim as the right of members of the Black race to participate in the administration of justice in a given jurisdiction. It ignored the possibility that a state might use the peremptory challenge to select a biased jury, to enhance the probability of conviction. The *Swain* approach failed to recognize in a large majority of cases there is no compelling reason to exclude members of a particular race or ethnic group. It also fails to offer any protection in those factual situations, such as presented here, where racial overtones are present and may well influence the outcome.[1]

Is justice to sit supinely by and be flaunted in case after case before a remedy is available? Is justice only obtainable after repeated injustices are demonstrated? Is there any justification within the traditions of the Anglo-Saxon legal philosophy that permits the use of a presumption to hide the existence of an obvious fact?

*Commonwealth v. Martin, supra* 461 Pa. at 299, 336 A.2d at 295 (Nix, J. dissenting).

Even accepting the *Swain* view that the equal protection clause focuses upon the prevention of a deliberate exclusion of the "distinctive class" from participation in the administration of justice, *see e. g. Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), that holding provides no basis for concluding that instant appellant's right to a fair trial before a petit jury selected from a fair cross section of the community was not infringed upon. In addition to the equal protection provisions in both the federal[2] and state constitutions,[3] which are designed to provide equality among

1. The closeness of the factual issues presented in this trial was reflected in the two full days of deliberation that were required before the jury finally reached the verdict of guilt.

2. U.S.Const., Amend. XIV, § 1.

3. P.S.Const. art. III, § 32.

the various segments of our pluralistic society, there are also the constitutional mandates which assure all defendants a fundamentally fair adjucative process.[4] The integrity of that process may not be tainted by extraneous considerations such as race or religion.[5] I am satisfied the Supreme Court of the United States did not intend to suggest in *Swain* that the formulae articulated therein was to be employed as the single prophylactic to insulate against all of these concerns.[6]

We attempted to articulate the weaknesses of the *Swain* approach in our dissent in *Martin, supra*:

The glaring weakness in the *Swain* rationale is that it fails to offer any solution where the discriminatory use of peremptory challenges is made on a selected basis. In Northern communities systematic exclusion of an entire racial group from juries is rarely seen. More frequently, the problem arises in cases where the facts give rise to racial overtones and where an objective and unbiased jury is most needed. *Swain* provides no protection against this type of abuse. To the contrary, it facilitates its perpetuation.

... It is, however, abundantly clear that both the Federal and the Pennsylvania Constitution guarantee the accused the right of trial by his peers. U.S.Const., Amend. VI; Pa.Const., Art. 11, § 9. It would seem incumbent

4. *Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979); *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977); *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976).

5. *United States v. Williams*, 612 F.2d 735, *cert. denied*, 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (C.A.Pa., 1979); *Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978); *Commonwealth v. Jones*, 477 Pa. 164, 383 A.2d 874 (1978); *Commonwealth v. Futch*, 469 Pa. 422, 336 A.2d 246 (1976).

6. The *systematic* exclusion of any "distinctive" group in the community from participation in the administration of justice is a real concern, *see e. g., Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) and requires attention. This fact does not force the conclusion that the "fair-cross-section violation" is limited to a pattern of such violations. Constitutional protections must be as viable in individual cases as it is where a pattern of discrimination is demonstrated.

upon this Court to interpret our constitutional provision in such a manner that it meets the kind of injustices which are prevalent within this jurisdiction.

*Commonwealth v. Martin, supra* 461 Pa. at 299–300, 336 A.2d at 294–296 (Nix, J. dissenting).[7]

It must be emphasized that the objective sought to be obtained by the inclusion of members of the "distinctive class" is not that those individuals are assumed to be partial to a fellow member of that group, but rather that their inclusion will tend to eliminate any bias against those of that class, that in their absence may otherwise influence the decision. Moreover, the inclusion of members of the "distinctive class" on the petit jury, or at least the prohibition of a deliberate attempt to prevent their service, provides a perception of fairness in the proceedings. To argue, as the majority attempts to do, that the unfettered exercise of the peremptory challenge fosters the perception of impartiality by deliberate exclusion (in a cause where the racial overtones are obvious) is unrealistic and hypocritical. The closeness of the factual issues presented in this particular case was demonstrated by the difficulty the jury experienced in reaching a judgment. It is unfortunate that the legitimacy of the proceedings was allowed to be tainted by the misguided belief in the sanctity of an unbridled and arbitrary right to exclude prospective jurors who have otherwise demonstrated their competency to serve as impartial jurors. The ultimate objective in jury selection should be the impanelling of an impartial trier of fact. *Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975); *Commonwealth v. Santiago,* 456 Pa. 265, 318 A.2d 737 (1974); *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972); *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552, vacated 392 U.S. 647, 88

7. Since my dissent in *Martin,* there have been at least two jurisdictions that have addressed the issue and have adopted the approach suggested. *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979).

S.Ct. 2277, 20 L.Ed.2d 1344, appeal after remand, 449 Pa. 33, 296 A.2d 554, *cert. denied*, 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 963 (1967). The use of an unrealistic presumption to undermine this purpose is unconscionable and gives credence to those who seek to discredit our system of jurisprudence.[8]

## II.

I also must express my disagreement with the trial court's decision to permit the introduction of appellant's prior convictions for impeachment purposes. Appellant had no alibi evidence, but merely sought the opportunity to deny the victim's allegations. The trial court ruled that if appellant merely denied the allegations, the prior convictions could be used to impeach his testimony. Further, the trial court ruled, "if he testifies differently, or other things come out, I could always change any ruling, depending on what I hear said by your client on the stand." As a result of this ruling, appellant elected not to testify in his own behalf. Thus, the jury was called upon to decide the case with only the evidence offered by the Commonwealth.

First, the majority attempts to disparage a simple denial of guilt and suggests that a defense of alibi or consent may warrant greater consideration. This premise is without any logical or legal foundation. It is obvious that even a simple denial of guilt is much more persuasive when the accused is afforded the opportunity of taking the stand and asserting that position rather than relying upon his plea of not guilty to frame the issue. In *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978) we attempted to accommodate the fundamental right of the accused to testify as a witness on his own behalf, U.S.Const., Amend. V and VI, Pa.Const., art. I, § 9, *Commonwealth v. Thompson*, 444 Pa. 312, 281 A.2d 856 (1971) and the right of the state to impeach his testimo-

---

**8.** To all objective observers, it seems our prior decisions have encouraged prosecutors to use peremptory challenges to arrange the racial balance of juries to their benefit. *See, e. g., Commonwealth v. James*, 246 Pa.Super. 251, 371 A.2d 957 (1977) (all 22 Blacks were excluded from a jury chosen from a panel of 79—eight (8) for cause and fourteen (14) by use of peremptory challenge).

ny. To achieve that balance this Court suggested the following criteria:

> In making the determination as to the admissibility of a prior conviction for impeachment purposes, the trial court should consider: 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; [4] 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.
>
> *Commonwealth v. Roots,* 482 Pa. 33 at 39–40, 393 A.2d 364 at 367 (1978).

The footnote contained in the above quote reads as follows:

> (4) Here the age of the prior conviction should be considered. Also the nature of the prior offense must be taken into account (e.g. a larceny accomplished by stealth or misrepresentation bears more directly upon veracity than a taking by force, thus the argument for admission is stronger for the former than the latter).
>
> *Commonwealth v. Roots, supra,* 482 Pa. at 39 n. 4, 393 A.2d at 367 n. 4 (1978).

I cannot agree with the analysis set forth in the Commonwealth's brief, which is incorporated virtually verbatim by the majority opinion, to justify the trial court's ruling to permit the evidence of the prior offenses. It is true that prior convictions for theft and robbery have a sufficient relationship to the veracity of the defendant-witness to satisfy the first consideration of the *Roots* test. I would also agree that the third consideration would not dictate the

exclusion of the testimony since appellant had reached legal age at the time the alleged act was committed. My disagreement results from a consideration of the other three factors, which on balance, force the conclusion that appellant should not have been denied the opportunity to confront the jury and assert his denial.

Here the issue was whether appellant had committed a sexual attack upon the complaining witness. The prosecution's case depended solely upon the testimony and the identification of the alleged victim. Had appellant been free to offer his denial subject to cross-examination by the prosecution, without reference to the prior convictions, the jury would have had before it the accused and could have made their judgment based upon the appearance of both the victim and appellant on the witness stand. The traditional standards for assessing credibility would have provided the basis for the judgment.

It again must be emphasized that the question of guilt or innocence in this case was an extremely close one. Under such circumstances, the failure of the defendant to take the stand in his own behalf cannot be dismissed as having no significance. There also can be very little question of the legitimacy of the defense's concern as to the prospects of having prior convictions of robbery and theft made known to this jury. It would appear that the instant situation presents a clear example of a situation where the introduction of the prior record would have a greater tendency to smear the character of the defendant than that testimony would serve to assist the jury in assessing credibility. Thus, the second criteria articulated in *Roots* appears to argue against the ruling made by the trial court.

A consideration of the fourth criteria also supports the conclusion that the trial court's ruling was in error. When we weigh the prosecution's need for the introduction of the prior offenses against the availability of other evidence which the defense may have had to present its case, it appears that the scales must also be tipped in favor of the defense. In this case, the Commonwealth had available the

victim of the crime who was an eyewitness and could supply all of the details to support the Commonwealth's version of the event. There was no reliance upon circumstantial proof. The defense, on the other hand, did not have other available means to refute the Commonwealth's testimony. As noted by the majority, there was no alibi testimony. Under the facts of the case only the perpetrator and the victim were present. To conclude as the majority does that the failure of the defense to assert an affirmative defense such as alibi or consent reduces the defense's need for testimony from the defendant is absurd. Unquestionably, the defendant's assertion before the jury of a denial would have been critical to his position.

Finally, the fifth criteria also dictates that the evidence of the prior convictions should not have been permitted in the event of the testimony of the defendant. Had the defendant taken the stand in his own behalf, his credibility could have been tested by cross-examination. I believe that that would have been sufficient. It must be realized the only means of testing the credibility of the victim available to the defense was the defense's right of cross-examination. Under such circumstances, it is difficult to understand why the prosecution should be afforded more.

For the above stated reasons, I dissent.