BOROUGH OF OCEANPORT, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND SARA S. VALENCIA, PLAINTIFFS, v. MILTON HUGHES, MONMOUTH COUNTY SUPERINTENDENT OF SCHOOLS, VALIERIE GOGER-MALLO, SECRETARY SHORE REGIONAL BOARD OF EDUCATION, SHORE REGIONAL BOARD OF EDUCATION, BOROUGH OF WEST LONG BRANCH, BOROUGH OF MONMOUTH BEACH AND BOROUGH OF SEA BRIGHT, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Monmouth County

Decided June 3, 1982.

*G. Stephen Ingram* for plaintiffs (*Ingram & Kelley,* attorneys).

*Alfred E. Ramey, Jr.,* Deputy Attorney General for defendant Milton Hughes (*Irwin I. Kimmelman,* Attorney General, attorney).

*Alex Tucci* for defendants Goger-Mallo and Shore Regional Board of Education (*Gagliano, Tucci, Iadanza & Reisner,* attorneys).

*John R. Orlovsky* for defendant Borough of West Long Branch (*Orlovsky, Grasso & Orlovsky,* attorneys).

*William R. Blair, Jr.* for defendant Borough of Monmouth Beach (*Parsons, Canzona, Blair & Warren,* attorneys).

McGANN, J.S.C.

This action involves a challenge to the manner of apportioning membership of the Shore Regional High School Board of Education. The regional district comprises the Boroughs of Monmouth Beach, Oceanport, Sea Bright and West Long Branch.[1] The total membership of the Board (*N.J.S.A.* 18A:13–8) is nine, presently apportioned as follows: Monmouth Beach—1; Oceanport—3; Sea Bright—1; West Long Branch—4. That apportionment is based on 1970 census figures.

*N.J.S.A.* 18A:13–9 provides that the apportionment of the seats amongst constituent districts "shall continue in effect unless and until a re-apportionment shall become necessary by

---

[1] All parties agree that no matter what the outcome of this litigation, Sea Bright will still be entitled to but one member, hence it has been dismissed as a party defendant.

reason of the official promulgation of the next federal census" and, in such case, "immediately after the promulgation of said census ... the County Superintendent ... in which the constituent districts are situate shall re-apportion members accordingly." *N.J.S.A.* 18A:13–9 further provides that "if any constituent districts shall become entitled to increased representation on the board the additional members shall be elected at the next annual school election of the regional district," which in this case was scheduled for April 6, 1982. *N.J.S.A.* 18A:14–2.[2]

On February 11, 1982 defendant Milton Hughes, the Superintendent of Schools for Monmouth County, notified the Shore Regional School Board that, in accordance with *N.J.S.A.* 18A:13–9 and because the 1980 federal census had been officially promulgated for the State of New Jersey as of January 18, 1982, plaintiff Borough of Oceanport's representation on the Shore Regional Board was to be reduced from three seats to two and the representation of the Borough of Monmouth Beach was to be increased from one seat to two.

*N.J.S.A.* 18A:13–8 provides that in making the apportionment or reapportionment of seats, as the case may be, amongst the constituent school districts, "there shall be subtracted from the number of inhabitants of a constituent school district ... the number of such inhabitants who according to the records of the Federal Bureau of the Census ... are military personnel stationed at, or civilians residing within the limits of, any United States Army, Navy, or Air Force installation located in such constituent district." Located within the Borough of Oceanport is a portion of Fort Monmouth, a United States Army installation.

Subsequent to the promulgation of the 1970 Federal Census, the County Superintendent of Schools performed the statistical

---

2   A stay of the reapportionment plan promulgated by the County Superintendent was granted. On April 6, 1982 members were elected on the basis of the prior apportionment related to 1970 census figures.

exercise provided for in *N.J.S.A.* 18A:13–8 and *N.J.S.A.* 18A:13–9. According to the Federal Bureau of the Census, the official population for the Borough of Oceanport as of April 1, 1970 was 7,503, of which the County Superintendent determined that 2,770 were either military personnel stationed at or civilians residing within the Fort Monmouth portions of Oceanport.

Although the 1980 census count of 5,888 for Oceanport became official as of January 18, 1982, the census data necessary to determine the number of military personnel stationed at or civilians residing within the Oceanport portions of Fort Monmouth has not been released by the Federal Bureau of the Census and is not expected to be available for some time. Realizing that this essential information was lacking, the State Department of Education solicited the opinion of the Attorney General as to how regional school districts containing military installation were to handle reapportionment under the 1980 census. He advised that in the absence of the necessary 1980 data as to military or civilian personnel, they were to utilize the figures that had been promulgated in that regard for the 1970 census. Defendant Hughes accordingly subtracted 2,770 from 5,888 and determined that Oceanport's effective population for the purpose of school board representation was 3,118. Using that figure and 1980 census figures for the other members of the district led to the challenged reapportionment of representative seats on the Board.

■ Plaintiff Valencia is a current member of the regional board from Oceanport. If the reapportionment directed by the County Superintendent takes effect, it is her seat which will be lost by Oceanport and added to Monmouth Beach. She alleges that in deducting the 1970 census figures for military population at Fort Monmouth from the total 1980 census figures for Oceanport the Superintendent erred because the 1980 census figures for military population at Fort Monmouth, when promulgated, would be far less than 2,770 and, if used, would leave the population ratio among the several constituent municipali-

ties (and the proportional representation) essentially unchanged. In addition, she mounts an attack on the facial constitutionality of *N.J.S.A.* 18A:13–9 which decrees the elimination of military post personnel from the census count of Oceanport for the purpose of establishing the proportional representation. She seeks a declaration that the statute is unconstitutional and she has standing to do so. *Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y.,* 58 *N.J.* 98 (1971), *and see Salorio v. Glaser,* 82 *N.J.* 482 (1980). Should plaintiffs fail in this legal challenge, Valencia's seat for Oceanport will be declared vacant and a special election for the added Monmouth Beach seat will be conducted.

All parties have fully briefed the constitutional issue and agree that it should be decided now by the court.[3]

For the purposes of the census count for Oceanport "permanent" civilian and military personnel stationed at Fort Monmouth are counted. Transient personnel are excluded. "Permanent" personnel are those assigned to duty at Fort Monmouth for a period exceeding 30 days and who were actual residents for a period of at least 30 days. All others are "transients." If otherwise qualified, *N.J.S.A.* 19:31–5, those persons are eligible voters in Oceanport and in the Shore Regional School District

---

[3]If plaintiffs succeed on the constitutional issue, a deduction for military and civilian personnel at Fort Monmouth will not be made and the matter will be remanded to the County Superintendent for recalculation of representation. *Cf. Wilbert v. DeCamp,* 72 *N.J.Super.* 60 (App.Div.1962). If plaintiffs fail, their appeal lies to the Appellate Division from the decision of the County Superintendent (*R.*2:2–3) and from the decision of this court on the constitutional issue, should they seek appellate review. To accelerate a final decision plaintiffs were permitted to develop testimony as to the actual number of inhabitants of Oceanport who were "military personnel stationed at, or civilians residing within the limits of" Fort Monmouth on April 1, 1980. I find that the expertise of their demographic witness Reading, is acceptable and that the methods he used were reliable. As of March 1, 1982 he found the number of military and civilian personnel at Fort Monmouth fitting the description of "inhabitants" of Oceanport to be 965. He further opined that a like figure for April 1, 1980 would have been 40 more or 1,005. I find that to be the correct figure to be deducted if the statute is constitutional.

election. *Marks v. New Hanover Tp.*, 124 *N.J.Super.* 504 (App. Div.1973). Children of these permanent personnel are educated by the Shore Regional High School District.

For purposes of this action the constitutional challenge is directed to this sentence of *N.J.S.A.* 18A:13–8:

> In making the apportionment of the membership of a regional board of education .... there shall be subtracted from the number of inhabitants[4] of a constituent school district, as shown by the last Federal census officially promulgated in this state, the number of such inhabitants who according to the records of the Federal Bureau of the Census .... are military personnel stationed at, or civilians residing within the limits of, any United States Army, Navy or Air Force installation, located in such constituent school district.

Plaintiffs rely on the decision of our Supreme Court in *Franklin Tp. v. North Hunterdon Reg'l High School Bd. of Ed.*, 74 *N.J.* 345 (1977). While not precisely in point, that case did explore in detail the basic equal protection argument and inserted the following significant footnote:

> All references to population are computed on the basis of an "apportionment population," and are figures used in calculating the current distribution of seats on the board as provided by *N.J.S.A.* 18A:13–8(a). That figure is determined in each district by deducting institutional and military population from the total census population. Although not projected by this appeal, we entertain serious doubts whether such an exclusion is constitutional in light of what was said in *Mahan v. Howell*, 410 *U.S.* 315, 330, 93 *S.Ct.* 979 [988] 35 *L.Ed.*2d 320, 333–34 (1973), modified 411 *U.S.* 922, 93 *S.Ct.* 1475, 36 *L.Ed.*2d 316 (1973); *Davis v. Mann*, 377 *U.S.* 678, 691, 84 *S.Ct.* 1441, 12 *L.Ed.*2d 609, 617 (1964) and *Carrington v. Rash*, 381 *U.S.* 89, 85 *S.Ct.* 775, 13 *L.Ed.*2d 675 (1965). As to the use of the Census in arriving at population figures, *see Connor v. Finch*, 431 *U.S.* 407 [416 at n. 13], 97 *S.Ct.* 1828 [1834 at n. 13], 52 *L.Ed.*2d 465, 475 at n. 13 (1977). [at 328]

In *Mahan v. Howell*, 410 *U.S.* 315, 332, 93 *S.Ct.* 979, 989, 35 *L.Ed.*2d 320 (1973), mod. 411 *U.S.* 922, 93 *S.Ct.* 1475, 36 *L.Ed.*2d 316 (1973), the United States Supreme Court observed that

---

[4] I deem that the use of the generic word "inhabitants" represents a legislative intent to eschew the more specific word "residents" so that the Fourteenth Amendment constitutionality of Art. II, par. 5, of the New Jersey Constitution is not implicated. *Cf. Marks v. New Hanover Tp.* above.

"discriminatory treatment of military personnel in legislative reapportionment is constitutionally impermissible." *Cf. Burns v. Richardson,* 384 *U.S.* 73, 86 *S.Ct.* 1286, 16 *L.Ed.*2d 376 (1966).

The equal protection argument here is that of all of the inhabitants of the Borough of Oceanport. Their proportionate representation on the regional board is diminished by the statutory exclusion of some of the inhabitants who happen to live on the military reservation. Had those same inhabitants, military or civilian, lived off–post in Oceanport, they would have been counted. In final analysis the exclusion turns on the intangible boundary line of property in the borough owned by the United States Government.

The arbitrariness of the statute is patent. The exclusion discriminates against the legitimate concern of all inhabitants of Oceanport in the decisions and policies of the regional board— policies which will have a direct effect on the tax burden ultimately imposed on them. The denial of equal protection of the laws resulting from the exclusion is clear. Accordingly, the words of the above sentence of *N.J.S.A.* 18A:13–8, "or who are military personnel stationed at, or civilians residing within the limits of, any United States Army, Navy or Air Force installation," are declared unconstitutionally void and of no effect since they are in derogation of the Fourteenth Amendment of the United States Constitution.[5]

The judgment entered herein is final as to the issue properly before the Court.

---

[5]This court has not addressed the argument that, as applied, the legislative scheme of military exclusion denies the inhabitants of Oceanport equal protection. Specifically do plaintiffs argue that by any standards the use of 1980 census figures to determine populations but 1970 census figures to set the excluded inhabitants is clearly irrational. That argument is more properly reserved to the Appellate Division if it should reach that issue on appeal from this decision.