FIDEL GHINI *et al.*, Plaintiffs-Appellants, v. HIGHWOOD-HIGHLAND PARK ELEMENTARY SCHOOL DISTRICT No. 111 IN LAKE COUNTY *et al.*, Defendant-Appellees.

Second District   No. 83—1128

Opinion filed December 28, 1984.

Paul P. Diambri and Wallace B. Dunn, both of Highwood, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan, and Thomas A. Morris, Jr., and Allyn J. Franke, both of Brydges, Roseborough, Morris, Franke & Miller, of Chicago (Margaret J. Mullen, Assistant State's Attorney, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, Fidel Ghini, Josephine Ghini, Armando Lenzini, Victoria Santi and Shirley Cabri, appeal from an order of the trial court that denied their motion for summary judgment and granted

the motion for summary judgment of the defendants, Highwood-Highland Park Elementary School District No. 111 (school district), certain named officials of the school district, and the clerk of Lake County.

On March 17, 1983, the plaintiffs filed a complaint in which they challenged the results of a referendum, held the previous month, in which the voters of the school district, which is located in Lake County, agreed to increase the maximum tax rate for the school district. The referendum passed by a margin of 62 votes. Among those persons voting in the election were individuals residing on the military reservation located at Fort Sheridan.

In this court, the plaintiffs raise a single assignment of error: that the trial court's order denying their motion for summary judgment and granting that of the defendants was improper, for the specific reason that the court below incorrectly determined that members of the military stationed at Fort Sheridan and their dependents were eligible to vote in the instant referendum. In particular, they maintain that section 17—3 of the Illinois School Code (Ill. Rev. Stat. 1983, ch. 122, par. 17—3) does not apply to members of the military or their dependents, because the State has no legislative jurisdiction over Fort Sheridan. They argue, in addition, that because the State cannot tax an area under exclusive Federal control, such as Fort Sheridan, it follows naturally that persons residing on Fort Sheridan may not vote in a referendum election to increase the tax rate for the school district.

For the reasons explicated below, we agree with the defendants that persons residing on the Fort Sheridan military reservation were eligible to vote in the referendum and conclude, therefore, that the trial court did not err in entering the order from which the plaintiffs appeal.

Section 3—1 of the Illinois Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 3—1), which prescribes the general qualifications for the exercise of the voting franchise in this State, provides in relevant part that any person residing "in this State" and in the particular election district for 30 days prior to any election is entitled to vote in the election "for all offices and on all propositions." The statute recites further that any military establishment situated within the boundaries of Illinois is "in this State," even though the Federal government may exercise exclusive jurisdiction over the installation.

Section 9—1 of the Illinois School Code (Ill. Rev. Stat. 1983, ch. 122, par. 9—1) provides that "[a]ll school elections shall be governed by the general election law of the State." Section 9—1.1 of the same enactment (Ill. Rev. Stat. 1983, ch. 122, par. 9—1.1) states that "the time and manner of conducting such referendum" submitted pursuant

to the School Code "shall be in accordance with the general election law of the State." The next section of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 9—2), which pertains in part to the question of referenda, defines a "voter" as "a person qualified to vote under the general election law." Lastly, section 17—3 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 17—3) prescribes that, with respect to a school district having a population of less than 500,000 inhabitants, the school board may submit any proposition "to increase the annual tax rate for educational purposes *** to the *voters* of such district ***." (Emphasis added.)

█ We observe, initially, that there is nothing in the Illinois Constitution or statutes that prohibits a person living on a military reservation from voting in an election, provided that that person fulfills the statutory voting requirements the State prescribes for its voters. More importantly, an examination of the statutory enactments to which we have referred above establishes clearly (1) that the legislature has extended the voting franchise to persons residing on a military reservation located within Illinois, and (2) that this general election franchise includes the right to vote on referenda or propositions to increase the annual tax rate for the school district that are submitted to the voters pursuant to section 17—3 of the School Code.

█ Although there is authority in other jurisdictions holding that a person who resides on a military installation over which the Federal government has exclusive control has no right to vote in certain elections (see *Evans v. Cornman* (1970), 398 U.S. 419, 423 n.3, 26 L. Ed. 2d 370, 375 n.3, 90 S. Ct. 1752, 1755 n.3; *Landgon v. Jaramillo* (1969), 80 N.M. 255, 454 P.2d 269; Annot., 34 A.L.R.2d 1193, 1195-96 (1954), and later case service 360-61 (1977)), it is "within the prerogative of the [Illinois] legislature to grant the right to vote to persons residing on military reservations even where the [F]ederal government has exclusive jurisdiction ***, because it is entirely within its province to prescribe the conditions upon which the voting franchise may exist within our [S]tate" (*Rothfels v. Southworth* (1960), 11 Utah 2d 169, 172, 356 P.2d 612, 614; accord, *Montoya v. Bolack* (1962), 70 N.M. 196, 206, 372 P.2d 387, 394).

█ We conclude that the Fort Sheridan military personnel and their dependents whose votes were challenged here, if otherwise qualified to vote under Illinois law, were eligible voters in the instant referendum election. See *Carrington v. Rash* (1965), 380 U.S. 89, 93-97, 13 L. Ed. 2d 675, 679-80, 85 S. Ct. 775, 778-80; *Arapajolu v. McMenamin* (1952), 113 Cal. App. 2d 824, 830-32, 249 P.2d 318, 322-23; *Borough of Oceanport v. Hughes* (1982), 186 N.J. Super. 109, 113-14,

451 A.2d 966, 968; *Township of New Hanover v. Kelly* (1972), 121 N.J. Super. 245, 249, 296 A.2d 554, 556; *Rothfels v. Southworth* (1960), 11 Utah 2d 169, 172-76, 356 P.2d 612, 614-17; *cf. Evans v. Cornman* (1970), 398 U.S. 419, 26 L. Ed. 2d 370, 90 S. Ct. 1752 (persons living in a Federal enclave were entitled to vote in Maryland elections).

In accordance with the views expressed above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

LINDBERG and REINHARD, JJ., concur.