Mr. Cliff Jeffords, Chairman Sebastian County Election Commission P.O. Box 10232 Fort Smith, AR 72913
Dear Mr. Jeffords:
This is in response to your request for an opinion on two questions regarding the qualifications of electors and the eligibility of candidates. Specifically, your two questions are as follows:
 1. Can a military person residing on a military reservation, who has a home of record outside the State of Arkansas, register and vote in this county? If so, what precinct in the county would he register in and what J.P. would he/she be represented by?
 2. Can a county employee, (county assessor employee) run for a quorum court position, or would there be a conflict of interest if he/she were elected to said quorum court position?
It is my opinion that the answer to your first question will depend upon whether the person in question has acquired a domicile on the military reservation. Domicile is determined by the person's intent as to their permanent home, and their actions must be consistent with this intent. If the person actually intends his "home of record" outside this state as his permanent home, he may have acquired no domicile in this state for voting purposes. This is a question of fact in each instance. The voting precinct of an eligible voter on a military reservation and the justice of the peace to represent them will be determined by the County Board of Election Commissioners, which has authority to alter precinct lines and create new precincts. A.C.A. § 7-5-101.
In response to your first question, a long line of early cases held that persons residing on military reservations could not acquire residences for purposes of voting in the state where they were stationed because usually the federal government had exclusive jurisdiction over the property. See, e.g., 29 C.J.S. Elections § 25, and cases cited therein. More recent cases, however, have held that due to the changes in the nature of such federal reservations, and the willingness of Congress to allow states some measure of jurisdiction over them, persons residing therein could acquire a residence for voting purposes, on the same terms as others residing in the state. See, e.g.,Kashman v. Board of Elections, 282 N.Y.S.2d 394, 54 Misc.2d 543
(1967), and Arapajolu v. McMenamin, 113 Cal. App.2d 824,249 P.2d 318 (1952). Other states have enacted statutes granting the right. See, e.g., Ghini v. Highwood-Highland Park ElementarySchool District No. 111, 84 Ill. Dec. 795, 472 N.E.2d 1191
(1984). See contra Royer v. Board of Election Supervisorsfor Cecil County, 231 Md. 561, 191 A.2d 446 (1963).
In 1970, a major decision of the United States Supreme Court impacted the question. In Evans v. Cornman, 398 U.S. 419
(1970), the Court held that persons living on a federal reservation in Maryland, because they had an equal stake in nearly every election with other Maryland residents, were entitled under the Fourteenth Amendment to protect that stake by exercising the equal right to vote. The appellants argued that persons who live on the federal reservation were residents of the reservation, and not the state. The Court stated that "Maryland may, or course, require that `all applicants for the vote actually fulfill the requirements of bona fide residence. . . . But if they are in fact residents with the intention of making [the State] their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation.'" 398 U.S. at 374, citing Carrington v. Rash,380 U.S. 89 (1965).
The import of this decision was recognized by Congress when it repealed the "Federal Voting Assistance Act of 1955." See
former 42 U.S.C. § 1973cc. This act, which primarily required states to allow out of state servicepersons to vote by absentee ballot in their home state,[1] preferably by a suggested federal postcard system, contained a provision which "recommended" that each state permit such military persons to acquire legal residence in the state where stationed for voting purposes, if they otherwise would qualify. The provision was repealed by the "Uniformed and Overseas Citizens Absentee Voting Act," enacted in 1986, and codified at 42 U.S.C. § 1973ff (Supp. 1991). The Congressional Record indicates that this "recommendation" was "no longer necessary because it is now an established principle under case law." See H.R. Rep. No. 765, 99th Cong., 2nd Sess. 1986, 1986 U.S. Code and Congressional Administrative News, 2009.
It is therefore my opinion that persons residing on military reservations may acquire the right to vote in the state, if they in fact have acquired the requisite residence, as is required of other voters in the state. In resolving the issue of residence, the intent of the voter is correctly considered together with his conduct as to his asserted residence. Booth v. Smith,261 Ark. 838, 552 S.W.2d 19 (1977). See also Pike County School Dist.No. 1 v. Pike County Board of Education, 247 Ark. 9,444 S.W.2d 72 (1969).
The second part of your first question regarding which precinct these persons will vote in, and which justice of the peace will represent them, must be determined by the County Board of Election Commissioners which has authority to alter precinct lines, and create new precincts. A.C.A. § 7-5-101.
The answer to your second question, in my opinion, is that the simultaneous service by a county assessor employee as a member of the quorum court is prohibited by statute, at least as long as the county employee would continue to draw a salary from the county as a county assessor employee. Section 14-14-1205 (c) (Cum. Supp. 1991) of the Arkansas Code provides as follows:
 JUSTICE OF THE PEACE AS COUNTY EMPLOYEE OR DEPUTY. No justice of the peace shall receive compensation as a county employee or deputy, nor shall any justice receive compensation or expenses from funds appropriated by the quorum court for any services performed within the county, other than as provided by this subchapter.
This statute would thus prohibit the county employee, if elected to the Quorum Court, from receiving any compensation as a county employee. It is therefore my opinion that unless the county employee wants to continue county employment at no compensation, dual service is prohibited.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] See also, Arkansas Constitution, Amendment 51, § 9(f), and A.C.A. § 7-5-406.