837 A.2d 1110 (2003)
364 N.J. Super. 623
BOARD OF EDUCATION OF THE RANCOCAS VALLEY REGIONAL HIGH SCHOOL DISTRICT, BURLINGTON COUNTY, Petitioner-Appellant,
v.
NEW JERSEY STATE BOARD OF EDUCATIONState of New Jersey, William L. LibreraCommissioner of Education and Walter J. KeissBurlington County Superintendent of Schools, Respondents-Respondents.
Township of Eastampton, Thomas Czerniecki and Andrea McGonigle, Intervenors.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 2003.
Decided December 11, 2003.
*1111 Stacy L. Moore, Jr., Marlton, argued the cause for appellant (Parker, McCay & Criscuolo, attorneys; Mr. Moore, on the brief).
Kimberley Lake Franklin, Deputy Attorney General, argued the cause for respondents (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Franklin, on the brief).
James M. Vogdes, III, argued the cause for intervenors.
Before Judges KING, LINTNER [1] and LISA.
The opinion of the court was delivered by LISA, J.A.D.
The Board of Education of the Rancocas Valley Regional High School District (District) appeals from a final decision of the State Board of Education which resulted in the reapportionment, after the 2000 Federal Census, of the seats on the District's school board, as allocated among the five constituent municipalities making up the District. The reapportionment was made by the Burlington County Superintendent of Schools, utilizing the "equal proportions" method. When challenged administratively by the District, the superintendent's decision was upheld by the Commissioner of Education. Upon further administrative appeal, the Commissioner's decision was upheld by the State Board of Education. On appeal before us, the District argues that the county and state education officials erred by using the equal proportions method. Alternatively, the District argues that the final agency action should be reversed because the calculations were incorrect or the matter should be remanded for discovery and further administrative proceedings to resolve disputed issues of material fact. We reject these arguments and affirm.
Prior to the reapportionment now before us, the seats on the District's board of education, assigned after the 1990 Federal Census, were allocated as follows: Eastampton-1, Hainesport-1, Lumberton-2, Mount Holly-3, Westampton-2. As a result of the 2000 Census, the allocation was changed by reducing Mount Holly's representation to two seats and increasing Eastampton's to two seats. The 2000 Federal Census revealed the following populations for the constituent municipalities: Eastampton (6,202), Hainesport (4,126), Lumberton (10,461), Mount Holly (10,728), and Westampton (7,217). These figures reflect a 1.7% decline in Mount Holly's population and a 30.1% growth in Eastampton's population since the 1990 Census.
After the County Superintendent notified the District of the reapportionment, the District filed a Petition of Appeal with the Commissioner of Education, challenging the reapportionment determination on the grounds that the incorrect apportionment formula was used. The District contended that the Superintendent was not authorized to use the equal proportions method, but was mandated by N.J.S.A. 18A:13-8 to utilize the "strict population" method, which the District contends would have resulted in no change in apportionment. The Superintendent and Commissioner contended utilization of the equal *1112 proportions method was legally authorized and there were no material facts in dispute. Accordingly, they moved for dismissal of the District's Petition of Appeal. The District filed opposition. On April 12, 2002, the Commissioner issued a decision granting the motion to dismiss the Petition of Appeal. On August 7, 2002, the State Board of Education issued its order affirming the decision of the Commissioner for the reasons expressed in his April 12, 2002 decision. This appeal followed.
Eastampton Township, its Township Manager, and a resident of Eastampton Township moved to intervene in the appeal. We granted their motion. The intervenors support the final agency decision. The intervenors have also raised an issue of standing, contending the District should not be permitted to contest the reapportionment decision, in effect spending the taxpayers' money of all five municipalities to fight what, in essence, is Mount Holly's battle. The District board voted to authorize the challenge to the reapportionment decision. The reapportionment decision affects the make-up of the District's board, which, as a body, has authorized the challenge. We are satisfied the District has a sufficient stake in the outcome of the reapportionment decision to confer standing to challenge that decision. We decline to preclude consideration of the merits based upon an assertion of lack of standing.
Initially, we note that no genuine issues of material fact are in dispute, and the matter was properly disposed of by summary disposition. The only material facts upon which the reapportionment decision was based are the undisputed census figures. A party challenging summary disposition must demonstrate some support for its position. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146, 150 (1995); R. 4:46-2(c). The remaining reapportionment issues, choice of the mathematical formula to be utilized and calculations in accordance with that formula, are not factual. The former is a legal issue, and the latter involves only a ministerial verification of the correctness of mathematical calculations. We are satisfied there was no need for discovery or any type of administrative factfinding hearing.
The dispute centers on which mathematical formula should be utilized to determine the apportionment of seats among the five constituent municipalities on this nine member regional board of education. The Legislature has ordained:
If there are nine or less constituent districts, the members of the board of education of the regional district shall be apportioned by the county superintendent... among said districts as nearly as may be according to the number of their inhabitants except that each constituent district shall have at least one member.

[N.J.S.A. 18A:13-8 (emphasis added).]
The District argues that this statutory language mandates use of the strict population method. Under this method, a simple calculation is made, by which the population of each individual municipality is divided by the total district population, resulting in a percentage for each municipality, totaling 100%. Those individual percentages are then applied to the number of seats available (nine), determining the number of seats for each municipality. Of course, significant rounding off is necessary to accomplish this result. We illustrate the application of this method, and the significance of the rounding off feature, by comparing the two largest municipalities, Lumberton and Mount Holly. The total district population is 38,734. Lumberton's percentage (10,461 ÷ 38,734) is 27.00728%. Mount Holly's percentage (10,728 ÷ 38,734) is 27.69659%. Applying Lumberton's percentage to the nine available *1113 seats, it is entitled to 2.4306552 seats. Applying Mount Holly's percentage, it is entitled to 2.4926931 seats. Rounded off, Lumberton gets two seats and Mount Holly three under this method.
We find no support in logic or in the law for the District's position that the statutory directive requiring apportionment "as nearly as may be according to the number of their inhabitants" constitutes a mandate for use of the strict population method. They are not equivalent terms. The statutory provision expresses a goal, not a method. Of course, representation on a nine-member board cannot be expected to precisely mirror the respective populations of the constituent municipalities. The goal is to allocate the members as nearly as possible to the respective populations in those municipalities. The specific method used to achieve that goal is left to the discretion of the responsible education officials. As long as the method used is rational and non-discriminatory, and is based on population, its use does not constitute an abuse of discretion. Wilbert v. DeCamp, 72 N.J.Super. 60, 72, 178 A.2d 85, 92 (App.Div.1962).
The education officials contend that the equal proportions method is more sophisticated and precise than the strict population method, and its results will better fulfill the legislative directive of apportioning seats as nearly as possible based upon population within the respective municipalities. Under the equal proportions method, a "priority list" is developed to determine allocation of the "remaining" seats after each constituent municipality is allocated its mandatory minimum of one seat. See Wilbert v. DeCamp, supra, 72 N.J.Super. at 67, 178 A.2d at 89. Here, with five municipalities and nine seats, there are four "remaining" seats to be allocated. In his April 12, 2002 decision, the Commissioner described the formula in detail:
[T]he equal proportions method begins with assigning each school district one representative. Thereafter,
[t]he population of each municipality is divided by the square root of 2, 6 and 12 (geometric mean) * * * until the number of quotients so calculated for each community exceeds by at least one (1) the number of additional representatives to be allotted to that municipality. * * * [All quotients are arranged] in sequence beginning with the largest to form a priority list. * * * The remaining numbers are allotted to the municipalities having the highest positions on the priority list.
Plugging in the 2000 census population figures, the superintendent determined the priority list in accordance with that formula, revealing the following results:

 BOARD MEMBER APPORTIONMENTS
 COUNTY: Burlington
 DISTRICT: Rancocas
 Current 2000 New Priority
 Municipalities Apportionment Census Apportionment List Excess
 ______________ _____________ ______ _____________ _____ _______
 1 Eastampton 1 6202 2 4 7585.84
 2 Hainesport 1 4126 1 3 7397.04
 3 Lumberton 2 10461 2 5 5103.19
 4 Mt. Holly 3 10728 2 1 4385.48
 5 Westampton 2 7217 2 4 4379.688
 6 3 4270.685
 7 4 3096.907
 8 3 3019.831
 5 9 9 4

*1114 Thus, for the "remaining" four seats, the priority list allocates them, one each (in descending order of priority) to Mount Holly, Lumberton, Westampton and Eastampton. The resulting calculations correctly reflect application of the formula employed.
Our scope of review of agency action is narrowly limited. We will not upset an agency decision unless it is shown that it was arbitrary, capricious or unreasonable, or that it violated legislative policies expressed or implied in the act governing the agency. Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712, 715 (1963). In the particular context here presented, evaluation of a reapportionment plan, we will not disturb the agency decision absent a "positive showing of invidious discrimination or other constitutional deficiency." Davenport v. Apportionment Comm'n of New Jersey, 65 N.J. 125, 135, 319 A.2d 718, 723 (1974). Unless the challenger can overcome the presumption of legality that is accorded to the plan, judicial interference is not justified. Ibid.
We are satisfied there was no mistaken exercise of discretion in the use of the equal proportions method. That method has gained substantial recognition as one accurately reflecting representation based on population. See 2 U.S.C.A. § 2a(a) (mandating equal proportions method for congressional redistricting); United States Department of Commerce v. Montana, 503 U.S. 442, 465, 112 S.Ct. 1415, 1430, 118 L.Ed.2d 87, 107 (1992) (holding that "the decision to adopt the method of equal proportions was made by Congress after decades of experience, experimentation, and debate.... For a half century the results of that method have been accepted by the States and Nation."); N.J. Const. art. IV, § 2, ¶ 1 (mandating use of equal proportions method for apportionment of New Jersey legislative districts); Asbury Park Press v. Woolley, 33 N.J. 1, 9, 161 A.2d 705, 709 (1960) (noting that the equal proportions method "seems generally to be regarded as producing the smallest relative differences in population per assemblyman and the smallest relative difference in the individual share in an assemblyman.").
We have no hesitancy in concluding that the education officials did not abuse their discretion in choosing this well-recognized method to apportion these seats. At oral argument, the Deputy Attorney General represented that the county superintendents throughout the state and the Commissioner of the Department of Education have uniformly utilized this method since at least 1990. Indeed, it was represented that the apportionment previously made for the district here was made using the equal proportions method after the 1990 Census. It was further represented, however, that although this is the uniform practice, it is nowhere mandated or codified. In order to avoid the potential for what might be characterized as inconsistent or arbitrary results if one formula were used in some cases and another formula used in other cases, the State Board of Education might be well advised to codify, by regulation, directive, or other appropriate means, that the equal proportions method shall be utilized in allocating seats on regional boards. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 328-32, 478 A.2d 742, 749-52 (1984). Because the record before us contains no evidence of disparate treatment resulting from the use of different methods for different boards, and because we conclude the method used in this case was an appropriate one, the issue is not now before us.
We reject the District's argument that because N.J.S.A. 18A:13-8 expressly requires use of the equal proportions method for regional boards consisting of more than *1115 nine members[2] the absence of that mandatory directive for boards with nine or less members implies a legislative directive that some other method be used. The District argues that the Legislature has amended this section on several occasions and has never inserted in it a mandatory requirement for use of the equal proportions method with regional boards of nine or less members. In light of the widespread and longstanding use of the equal proportions method in legislative reapportionment matters and regional school board allocation matters, and in light of the firmly established acceptability and reliability of that method, we glean no such legislative intent. As we previously stated, the statute, by its clear terms, allows for discretion by the appropriate education officials to use a method which is geared to achieve the legislative goal of allocating seats as nearly as possible based upon population. The Legislature could not have intended that such discretion would not allow for use of a proven formula.
Affirmed.
NOTES
[1] Judge Lintner did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] We are informed by counsel that only one such district exists in the State.